STATE OF MINNESOTA

IN SUPREME COURT

A13-1912

Original Jurisdiction

In re Petition for Review of Panel
Decision against RESPONDENT,
Panel Case No. 35104.

Per Curiam
Took no part, Page, J.

Filed:  August 6, 2014
Office of Appellate Courts

_____

Christopher Madel, Emily Cowing, Robins, Kaplan, Miller & Ciresi L.L.P., Minneapolis, Minnesota, for complainant.

Charles E. Lundberg, Bassford Remele, PA, Minneapolis, Minnesota, for respondent.

Martin A. Cole, Director, Timothy M. Burke, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota.

_____

S Y L L A B U S

A panel of the Lawyers Professional Responsibility Board acted in an arbitrary and capricious manner by bifurcating respondent's misconduct into separate disciplinary matters when the panel found that respondent violated two rules of professional conduct.

Petition for review granted; panel decision reversed; supplementary petition for disciplinary action to be filed.

1

PER CURIAM

This case involves a petition for review, filed pursuant to Rule 9(*l*), Rules on Lawyers Professional Responsibility (RLPR), of a decision of a panel of the Lawyers Professional Responsibility Board. The Director of the Office of Lawyers Professional Responsibility submitted charges of unprofessional conduct to the panel, alleging that respondent violated Minn. R. Prof. Conduct 1.5(e) and 8.4(c), by entering into an improper referral and fee-splitting arrangement with M.M., an associate in complainant's law firm. The panel determined that the Director should file a disciplinary petition against respondent for the Rule 8.4(c) misconduct, but that respondent should receive a private admonition for the Rule 1.5(e) misconduct. Because the panel's decision to bifurcate respondent's misconduct into separate disciplinary matters was arbitrary and capricious, we grant the petition for review, reverse the admonition, and order the Director to file a supplementary petition for disciplinary action against respondent alleging the Rule 1.5(e) misconduct.

A personal injury law firm ("Law Firm") filed a complaint with the Director about respondent, who is a plaintiff's personal injury attorney in solo practice. Following an investigation of the complaint, the Director submitted charges of unprofessional conduct to a panel under Rule 9, RLPR. The Director alleged that respondent knowingly assisted M.M., who at the time was an associate at the Law Firm, in improperly keeping referral fees that respondent paid M.M. but that should have gone to the Law Firm. The Director

alleged that respondent's conduct violated Minn. R. Prof. Conduct 8.4(c).[1] The Director

also alleged that respondent failed to disclose to his clients that he was sharing attorney

fees with M.M., in violation of Minn. R. Prof. Conduct 1.5(e).[2] The panel held an

evidentiary hearing pursuant to Rule 9(a)(2), RLPR. Both M.M. and respondent testified

at the hearing.[3]

The evidence presented at the hearing established that M.M. worked at the Law

Firm from January 2010 until December 2011. While working at the Law Firm, M.M.

staffed the intake call hotline and was responsible for representing clients from intake

until the case settled. If the case did not settle, M.M. would pass it on to another attorney

---

[1]    Under Minn. R. Prof. Conduct 8.4(c), it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

[2]    Under Minn. R. Prof. Conduct 1.5(e),

A division of a fee between lawyers who are not in the same firm may be made only if

> (1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;

> (2) the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing; and

> (3) the total fee is reasonable.

[3]    The Director previously filed a petition for disciplinary action against M.M., alleging that M.M. violated Minn. R. Prof. Conduct 1.5(e) and 8.4(c), for the same referral and fee sharing agreement with respondent. M.M. unconditionally admitted the allegations of the petition and the parties jointly recommended a 30-day suspension to this court. We approved the parties' recommendation and suspended M.M. for 30 days.

to litigate. M.M. testified that he knew the general rules for when the Law Firm would decline to represent a potential client. M.M. also knew that he did not have the authority to make any referrals and that the Law Firm did not make referrals to competitors.

One evening while respondent and M.M. were having drinks, respondent suggested that he would be happy to take any cases that the Law Firm declined, and the two of them came up with a referral plan. As part of the referral plan, M.M. would refer clients to respondent and respondent agreed to give M.M. one-third of the contingency fee received for each referral. M.M. testified that he had numerous drinks that evening and does not remember all of the specifics, but "it was implied that" the fees would be paid to M.M. directly, and that the agreement was to be kept secret from the Law Firm. Respondent denied that M.M. ever told him that the arrangement needed to be a secret.

The record reflects that M.M. referred approximately 100-200 clients to respondent starting in summer 2010 and ending in December 2011. Initially, M.M. referred only cases that the Law Firm would have declined. But as time went on, M.M. began to refer cases that the Law Firm probably would have accepted because the cases had a higher potential economic value.

Respondent represented 23 clients referred by M.M. Once respondent began his representation of a referred client, he would have the client sign a retainer agreement. The agreement stated: "Client(s) is/are aware that [RESPONDENT] may split his contingent fee recovery, if any, with referring attorneys and/or law firms and Client(s) hereby consents to such fee splitting arrangement." But M.M. was not listed in the retainer agreement, and the retainer agreement did not disclose that M.M. would receive

4

one-third of the contingent fees. In addition to the retainer agreement, respondent also provided each client with a distribution agreement if a claim settled. The distribution agreement itemized all of the distributions from the settlement. Respondent would ask each client whose case settled to sign the distribution agreement when the client received their portion of the settlement proceeds.

Respondent paid M.M. a referral fee in seven cases, all of which involved a settlement. Respondent prepared a distribution agreement for each of the seven cases. In two of the distribution agreements, respondent did not designate that M.M. was receiving a portion of the attorney fees. The remaining five distribution agreements indicated that respondent was splitting his attorney fees with either M.M. or the Law Firm.

Respondent paid M.M. his referral fee directly. Specifically, respondent made the referral checks payable to M.M. with M.M.'s home address listed on the check, and respondent hand-delivered the checks while he and M.M. were having dinner or drinks. M.M. testified that he was aware that these referral fees should have been paid to the Law Firm. But respondent testified that he did not know that M.M. had an obligation to remit referral fees to the Law Firm.

After the hearing, the panel found that as to the alleged Rule 8.4(c) violation, "this is a very difficult examination, largely turning on credibility. But given the totality of the circumstances, the conclusion of the panel is that there is probable cause for a public

discipline as to 8.4(c)." Following the panel's decision, the Director filed a petition for disciplinary action against respondent alleging the Rule 8.4(c) violation.[4]

With respect to the alleged Rule 1.5(e) violation, the panel concluded that respondent violated the rule and imposed a private admonition. In its written admonition, the panel found that respondent undertook representation of 23 people who M.M. referred to respondent and that respondent and M.M. agreed that respondent would pay M.M. one-third of any attorney fees respondent recovered in any matter M.M. referred to respondent. The panel further found that although respondent's retainer agreements advised his clients that he might share his attorney fees with another lawyer, the retainer agreements did not disclose that M.M. was not a member of respondent's firm, did not disclose that respondent would share his fees with M.M., and did not set forth the exact division of the fees. The panel also found that there were two cases in which respondent disbursed money but neither the retainer agreement nor the distribution agreement informed the client that the attorney fees award would be divided, that M.M. would receive a portion of the attorney fees, or that M.M. was not a member of respondent's firm. The panel concluded that respondent's conduct violated Minn. R. Prof. Conduct 1.5(e), but that the violation was isolated and nonserious.

The Law Firm filed a petition for review of the panel's determination to privately admonish respondent for the Rule 1.5(e) violation with this court pursuant to Rule 9(*l*),

---

[4] Respondent and the Director submitted a stipulation for discipline in which they jointly recommended a public reprimand. Action on the proposed stipulation is currently pending in this court awaiting the outcome of the present case.

RLPR. We requested further briefing from the parties as well as the Director. We also ordered the Law Firm to file an amended petition that "does not address what discipline should be imposed on respondent in any public disciplinary matter." *In re Petition for Review of Panel Decision against RESPONDENT, Panel Case No. 35104*, No. A13-1912, Order at 2 (Minn. filed Dec. 13, 2013).

I.

Under our attorney discipline system, the Director investigates complaints of attorney misconduct. Rule 8, RLPR. If the Director concludes that public discipline is warranted, the Director submits charges of unprofessional conduct to a panel of the Lawyers Professional Responsibility Board. Rules 8(d)(4), 9(a)(1), RLPR.

The panel makes a determination based on the documents the Director submitted or by conducting a hearing. Rule 9(a)(2), RLPR. The panel must make one of several determinations, which include: (1) "there is not probable cause to believe that public discipline is warranted"; (2) there is "probable cause to believe that public discipline is warranted" and the Director should file a petition for disciplinary action in this court; or (3) "the attorney engaged in conduct that was unprofessional but of an isolated and nonserious nature" and should receive an admonition. Rule 9(j), RLPR.

If the complaining party is not satisfied with the panel's disposition, the party may file a petition for review with our court. Rule 9(*l*), RLPR. We review the panel's decision and grant the petition only if we "find[] that the Panel acted arbitrarily, capriciously, or unreasonably." *Id.* A panel acts arbitrarily, capriciously, or unreasonably if it "relie[s] on factors it is not permitted or intended to consider" or if it

7

"entirely failed to consider an important aspect of the problem." *In re Charges of Unprofessional Conduct Contained in Panel File 98-26*, 597 N.W.2d 563, 567 (Minn. 1999) (citation omitted) (internal quotation marks omitted).

On appeal to our court, the Law Firm raises three arguments as to why the panel acted arbitrarily, capriciously, or unreasonably. First, the Law Firm argues that the panel unreasonably bifurcated respondent's discipline for violations of Minn. R. Prof. Conduct 1.5(e) and 8.4(c). Second, it argues that the panel acted arbitrarily and capriciously when it determined that respondent's violation of Rule 1.5(e) was isolated and nonserious. Third, the Law Firm argues that the panel's disparate treatment, without explanation, of respondent and M.M. for the same conduct was arbitrary and capricious.

II.

We turn first to the Law Firm's argument that the panel acted arbitrarily, capriciously, or unreasonably when it bifurcated respondent's alleged violations of Minn. R. Prof. Conduct 1.5(e) and 8.4(c) because our court has "consistently determined that multiple violations merit more serious discipline." As a threshold matter, respondent argues that our prior order, which directed the Law Firm to file an amended petition, precludes the Law Firm's argument. Respondent argues that the panel addressed two separate charges, and only the Rule 1.5(e) misconduct is before this court. We disagree with respondent that our order precludes consideration of the Law Firm's argument.

We previously ordered the Law Firm to file an amended petition that "does not address what discipline should be imposed on respondent in any public disciplinary matter." *In re Petition for Review of Panel Decision against RESPONDENT, Panel Case*

8

*No. 35104*, No. A13-1912, Order at 2 (Minn. filed Dec. 13, 2013). We do not understand the Law Firm's argument to be about *what discipline* should be imposed. The argument instead asks us to focus on all of respondent's alleged misconduct when determining *whether any discipline* is warranted. It is proper for us to examine all of respondent's alleged misconduct and to examine whether the panel acted arbitrarily, capriciously, or unreasonably when it bifurcated the rule violations into separate disciplinary matters.

We turn next to the merits of the Law Firm's argument and examine whether the panel's decision was arbitrary, capricious, or unreasonable. In determining whether the panel acted arbitrarily, capriciously, or unreasonably by bifurcating the misconduct, we look first to the relevant language of the rules governing the disciplinary process. The purpose of a panel hearing is "to determine whether there is probable cause to believe that public discipline is warranted." Rule 9(i)(1)(i), RLPR. Rule 9(j), RLPR, which provides the dispositions available to the panel, states that "[t]he Panel *shall* make *one* of the following determinations." (Emphasis added). The dispositions laid out in Rule 9(j) are connected with "or," which means that the panel can make only one of the determinations. *See Aberle v. Faribault Fire Dep't Relief Ass'n*, 230 Minn. 353, 360, 41 N.W.2d 813, 817 (1950) ("The word 'or' is a disjunctive and ordinarily refers to different things as alternatives.").

One of the dispositions available to the panel is to "instruct the Director to file in this Court a petition for disciplinary action" if the panel "finds probable cause to believe that public discipline is warranted." Rule 9(j)(1)(ii), RLPR. The rule does not state that "if [the panel] finds probable cause to believe that public discipline is warranted *for each*

9

*rule violation*," the panel should instruct the Director to file a petition for disciplinary action. Moreover, interpreting Rule 9 to allow a panel to bifurcate an attorney's violations of different rules of professional conduct into public and private discipline would be inconsistent with our long held practice of looking at multiple violations together when imposing discipline. *See, e.g.*, *In re Geiger*, 621 N.W.2d 16, 23 (Minn. 2001) (stating that "[e]ven where no single act of misconduct standing alone warrants severe public discipline, the cumulative weight and severity of multiple disciplinary rule violations may compel such discipline"); *see also In re Rebeau*, 787 N.W.2d 168, 175 (Minn. 2010).

Considering all of the misconduct together in one proceeding is particularly appropriate in this case because respondent's alleged rule violations arise from the same course of conduct. Respondent's alleged failure to make the proper fee sharing disclosures to his clients under Minn. R. Prof. Conduct 1.5(e) is intertwined with respondent's and M.M.'s alleged secret referral scheme, which resulted in M.M. receiving money that should have gone to the Law Firm, in violation of Minn. R. Prof. Conduct 8.4(c).

The panel heard testimony and determined that respondent violated both rules 1.5(e) and 8.4(c). The panel then bifurcated the rule violations by determining that public discipline was warranted for the 8.4(c) violation, but only private discipline was warranted for the 1.5(e) violation. We do not read Rule 9(j), RLPR, to permit the panel to bifurcate the misconduct charges against respondent under the circumstances presented here. Once the panel found that respondent's conduct violated multiple rules and

10

determined that respondent's conduct warranted public discipline, the panel should have instructed the Director to file a petition for disciplinary action based upon respondent's entire course of misconduct. *See* Rule 9(j)(1)(ii), RLPR. In failing to consider respondent's misconduct as a whole, the panel's decision was arbitrary and capricious. *See In re Charges of Unprofessional Conduct Contained in Panel File 98-26*, 597 N.W.2d at 567.[5]

Because the panel's decision was arbitrary and capricious, we grant the petition for review and reverse the panel decision issuing a private admonition. We further order the Director to file a supplementary petition for disciplinary action alleging the Rule 1.5(e) violation in the current public disciplinary proceeding against respondent, which already alleges the Rule 8.4(c) violation.[6] *See* Rule 9(*l*), RLPR (stating that if we grant a petition for review that we may "direct the filing of a petition for disciplinary action").

---

[5] This case does not involve allegations of misconduct that a panel has concluded are without merit. In this case, the Director alleged that respondent engaged in misconduct that violated two rules. The panel concluded that respondent committed the misconduct alleged and that there is probable cause to believe public discipline is warranted. The panel properly addressed all of the misconduct alleged and nothing we say here should be read to limit a panel's obligation to "terminate the hearing on any charge whenever it is satisfied that" there is not probable cause that the alleged misconduct occurred. *See* Rule 9(i)(1)(i), RLPR.

[6] Because we have determined that the panel's decision to bifurcate respondent's two rule violations was arbitrary and capricious, we decline to decide the other issues raised in the case at this time. These issues may be raised in a subsequent proceeding.

11

Petition for review granted; panel decision issuing private admonition reversed; and Director ordered to file a supplementary petition for disciplinary action.

PAGE, J., took no part in the consideration or decision of this case.